**AMERICAN HOME ASSURANCE COMPANY, Plaintiff,**

v.

**REPUBLIC INSURANCE COMPANY and United National Insurance Company, Defendants.**

**No. 90 Civ. 4095(MEL).**

United States District Court, S.D. New York.

April 3, 1992.

---

Metnick & Schuchman, P.C., (Scott H. Seskin, of counsel), New York City, for plaintiff.

Moore, Wohl & Newman, P.C. (Andrew J. Entwistle, of counsel), New York City, for defendants.

LASKER, District Judge.

In this coverage dispute among insurers,[1] defendants Republic Insurance Company and United National Insurance Company move for summary judgment against plaintiff American Home Assurance Company for failure of either the insured or American Home to provide defendants timely notice following the incident giving rise to the underlying claim.

The motion is granted.

### I.

The events underlying this dispute are tragic. On or about the morning of December 23, 1985, five people—a young couple, their infant child and the wife's parents—died in their home as a result of carbon monoxide poisoning caused by an improperly installed gas furnace. The insured company, Mobile Gas Service Corp., earlier had received a number of service complaints and had detected the furnace's improper installation, but had failed to correct the problem.

Mobile Gas was insured against liability from such incidents as follows:

1) Liberty Mutual Insurance Company was the primary insurer, with full responsibility for the initial $300,000 in liability for any claim.

2) American Home insured Mobile Gas for the first layer of excess liability up to $5 million above the $300,000 covered by Liberty Mutual.

3) Mobile Gas was covered by a further layer of $10 million for liability in excess of the $300,000 and $5 million policies. Liability for this second excess layer was divided among several insurers. Republic was responsible for ten per cent of the layer (i.e. up to $1 million on a full $10 million obligation), United National for an additional ten per cent, and American Home and other insurers not party to this action for the remaining eighty per cent.

On December 30, 1986, American Home agreed in principle to settle the underlying claims for $11,500,000. In this suit, acting as subrogee of Mobile Gas, it is suing Republic and United National for their respective shares of the second layer of excess insurance. Republic and United National on this motion assert the defense of untimely notice of the claim.

The record establishes that: the claims arose in December 1985; by January 10, 1986 at the latest Mobile Gas knew of its substantial culpability in the deaths; by February 12, 1986 American Home received notice of the claims; nevertheless Mobile Gas never notified Republic and United National; the defendants first learned of the claims on, respectively, January 21, 1987 (after a settlement had been negotiated) and November 10, 1986 (after extensive settlement negotiations had occurred).

\* \* \* \* \* \*

The Republic and United National policies contained essentially identical provisions requiring the insured to provide the insurers with a "notice of occurrence" "as soon as practicable" upon obtaining information indicating that the policy likely would be involved.[2] By the terms of the

---

**1.** Jurisdiction arises from the parties' diversity of citizenship. It is undisputed that New York law controls because the controlling contracts were made here and because the parties' principal place of business is here.

**2.** Condition 3 of Republic's policy provides: "Whenever the insured has information from which they may reasonably conclude that an occurrence covered hereunder involves injuries or damage which, in the event the insured shall

be held liable, is likely to involve this policy, notice shall be given to [Republic's agent], as soon as practicable, provided, however, that failure to give notice of any occurrence which at the time of its happening did not appear to involve this policy but which, at a later date, would appear to give rise to claims hereunder, shall not prejudice such claims."

Condition 2 of United National's policy provides: "Notice of an occurrence which appears likely to involve this policy shall be given by or

policies, the notice of occurrence provisions are conditions precedent to coverage: noncompliance results in forfeiture of the insured's right to recover on the policy.

In the insurance industry, a distinction is made between direct insurers, which issue policies directly to insured persons or entities, and reinsurers, which contract with direct insurers to reimburse them for successful claims brought on direct policies. Direct insurance policies can either cover entire claims or restricted portions of claims, as in the present case where Liberty Mutual covered the initial $300,000 in liability and other insurers provided layers of coverage against liability in excess of that amount.

■ New York law confirms that notice requirements in all direct insurance contracts are binding. *See Utica Mutual Ins. Co. v. Fireman's Fund Ins. Cos.*, 748 F.2d 118, 121 (2d Cir.1984) ("Compliance with the notice requirements set forth in an insurance contract is a condition precedent to recovery under New York law and failure by the insured to comply with such requirements relieves the insurer of liability"). The law is clear that direct insurers need not demonstrate prejudice to assert a defense of untimely notice, *see Olin Corp. v. Ins. Co. of North America*, 929 F.2d 62, 64 (2d Cir.1991); *see also Security Mut. Ins. Co. v. Acker–Fitzsimons Corp.*, 31 N.Y.2d 436, 440, 293 N.E.2d 76, 79, 340 N.Y.S.2d 902, 905 (1972), although there exists some uncertainty whether reinsurers must demonstrate prejudice to prevail on such a defense. *See Unigard Security Ins. Co., Inc. v. North River Ins. Co.*, 949 F.2d 630 (2d Cir.1991) (order certifying question of prejudice as element of timeliness defense for reinsurers to New York Court of Appeals, but noting that prejudice need not be shown by direct insurers under *Security Mutual, supra*).

on behalf of the insured to the company or any of its authorized agents as soon as practicable. The company at its own option may, but is not required to, participate in the investigation, settlement or defense of any claim or suit against the insured."

■ American Home contends, without citing any relevant authority, that second-layer excess insurers such as Republic and American Home should be viewed as reinsurers rather than direct insurers. Its argument is without merit. The Court of Appeals for this Circuit, applying New York law, recently reaffirmed that direct insurers need not show prejudice and applied that rule to affirm dismissal of claims against providers of "primary or excess comprehensive liability coverage." *Olin Corp. v. Ins. Co. of North America*, 929 F.2d 62, 63 (2d Cir.1991). Moreover, American Home's position is based on a false premise: that excess insurers are not actively involved in litigation or settlement of the claims and therefore have no need for prompt notice. The argument is belied by the fact that in this case American Home itself is an excess insurer only, albeit one layer removed from defendants, and yet was the primary negotiator that settled the underlying claims, and by the fact that United National's policy specifically provided that the firm at its option could participate in the defense and settlement of claims. Finally, Republic and American Home had a strong interest in the outcome of settlement negotiations since the figure arrived at fell within the layer of coverage which they provided.

■ Accordingly, the dispositive question is whether Republic and United National have shown, consistent with the standards applicable on motions for summary judgment, that Mobile Gas or American Home failed to provide timely notice upon learning that it appeared the second excess layer of insurance was likely to be involved, as required by the policies. The first notice of any kind, a "reinsurance advice," was sent by American Home on October 28, 1986, and received by United National on November 10, 1986 and by Republic on January 30, 1987 after the initial notice was mistakenly sent to a company unrelated to Republic.[3]

3.  Republic's first notice of any kind occurred on January 21, 1987, when it received a telephone call from a United National representative to discuss the settlement that had been negotiated by American Home.

There is no dispute that Mobile Gas knew of its exposure to substantial liability by January 10, 1986 at the latest. The company conducted a preliminary investigation and in a December 26, 1985 report concluded that it bore significant responsibility for the events. On January 10, 1986, the law firm of Inge, Twitty, Duffy & Prince provided a report to Mobile Gas's primary insurer, Liberty Mutual, which concluded, "Mobile Gas has exposure in this case." These initial reports did not discuss the likely extent of eventual liability, although according to American Home's legal brief, its statement of uncontested facts pursuant to Local Rule 3(g) and its counsel's affidavit in opposition to this motion,[4] the complaints filed by the victims' estates demanded a total of $5 million. According to American Home, it was advised of the claims in February 1986.

The record leaves ensuing events unclear. Inge, Twitty prepared a report addressed to American Home dated August 29, 1986, which referred to earlier discussions between the firm and American Home. That report described the claims as "very serious and [carrying] the probability of a huge recovery by plaintiffs." The report stated, "we don't feel there is any effective defense to these claims on behalf of your insured, Mobile Gas Service Corporation," and that "[t]he probability of an adverse verdict against Mobile Gas Service Corporation in this case is 100%." In a report dated September 22, 1986, Inge, Twitty advised American Home that there was a "probability that these cases can be settled in the $10,000,000 to $15,000,000 range."

On October 23, 1986, an American Home claims adjustor conducted a settlement meeting at which the victims demanded $12,500,000 in satisfaction of the pending claims. American Home's adjustor apparently mistakenly believed that secondary

direct insurers like Republic and United National were in fact reinsurers who were not essential parties to the litigation or settlement talks. *See* April 17, 1990 letter of Ralph Carlsen of American Home to Raymond Freidberg of United National, Ex. F to Affidavit of Andrew Entwistle, June 17, 1991 (explaining how American Home "goofed" in handling case). On December 30, 1986, plaintiffs and American Home agreed in principle to a final settlement of $11,500,000, with a January 22, 1987 deadline for final acceptance by plaintiffs. Republic and United National played no role in those negotiations.

The record establishes that despite the extensive activity in the underlying case, neither Republic nor United National received any notice of the underlying claim until after American Home's October 1986 settlement negotiations, and neither ever received notice directly from Mobile Gas. The first notice of any kind United National has record of receiving concerning the claim was a "Reinsurance Advice" from American Home, dated October 28, 1986 (five days after American Home's negotiations discussing a possible settlement of $12.5 million) and received November 10, 1986. Similarly, Republic's files contain a "Reinsurance Advice" from American Home dated October 28, 1986, but not received until January 30, 1987 as an attachment to a letter, apparently because American Home initially sent the notice to a company unrelated to Republic's designated agent. According to Republic, its first knowledge of the underlying case came on January 21, 1987, when a representative of United National telephoned to inquire how Republic intended to respond to American Home's settlement of the underlying case.

The affidavits and documents submitted by defendants, in conjunction with plaintiff's failure to provide evidence of earlier notice, establish that neither defendant re-

---

**4.** None of these sources constitute evidence cognizable on a motion for summary judgment; moreover, because plaintiff has not provided a copy of any complaints referred to, it is possible that the $5 million ad damnum clause referred solely to compensatory damages. Punitive damages apparently also were asserted. *See* Affidavit of Scott Seskin, August 16, 1991, Ex. E (American Home reinsurance advice of October 28, 1986 indicating that plaintiffs' demand for settlement was $25,000,000 and that "[p]unitive damages are insurable in the State of Alabama and are covered under our policy").

ceived notice at least until after extensive settlement discussions had been held, and at least ten months after Mobile Gas knew of the claims against it. Despite a few indications to the contrary—including American Home's inadequately supported contention that the victims' initial suits demanded a total of only $5 million, the fact that the first documentary evidence attaching a firm dollar figure to Mobile Gas's liability was dated September 22, 1986, and American Home's argument that its first indication that the claimants' recovery would reach the second excess layer came in October negotiations—it is inconceivable that a reasonable insured or insurance company, much less sophisticated and experienced litigants like Mobile Gas or American Home, could not have realized within days of the deaths of five people, for which Mobile Gas was clearly responsible, that there existed a serious likelihood of a recovery over $5,300,000, which would implicate the Republic and United National policies. No reasonable jury could conclude otherwise.

Accordingly, even if we were to consider the October 28, 1986 "reinsurance advice" from American Home (rather than from Mobile Gas as the policy required) as substantively adequate notice under the policies, the ten-month delay from the insured's knowledge of its exposure to the notification of its insurers violated the timely notice of occurrence requirement of those policies.

 Moreover, even the one-month delay between September 22, 1986, when American Home was specifically advised by its counsel of a likely recovery of $10 million to $15 million, and October 28, 1986, when it sent notice to Republic and United National of the claim, failed to meet the policies' requirement that notice be afforded "as soon as practicable," particularly because during that time settlement negotiations obviously bearing on defendants' interests were being conducted without their knowledge, and in Republic's case were completed before it had any knowledge of the victims' claim.

American Home contends that even if its notice to defendants was untimely, defendants' failure to disclaim coverage promptly waives their defense as a matter of New York law. *See* New York State Ins. Law § 3420(d) (McKinney's 1985). However, that statute applies by its own terms only to injuries "occurring within this state." This provision specifically has been held not to apply to accidents that occurred outside New York, *see, e.g., Ogden Corp. v. Travelers Indem. Co.*, 739 F.Supp. 796, 803–04 (S.D.N.Y.1989), *aff'd*, 924 F.2d 39 (2d Cir.1991), and accordingly provides no defense in this case, in which the underlying claim arose in Alabama.

In sum, there is no material factual question as to the length of delay prior to the notification of Republic and United National. No reasonable jury could find that the delay did not render the notice untimely within the meaning of the policies. Accordingly, the motion for summary judgment is granted and the complaint is dismissed.

It is so ordered.