[641 NYS2d 241]

AMERICAN HOME ASSURANCE COMPANY, Appellant, v INTERNATIONAL INSURANCE COMPANY, Respondent.

First Department, April 11, 1996

### APPEARANCES OF COUNSEL

*Seymour H. Metnick* of counsel, New York City *(Roy S. Schuchman* on the brief; *Metnick & Schuchman, P. C.,* attorneys), for appellant.

*Louis G. Corsi* of counsel, New York City *(Siff Rosen, P. C.,* attorney), for respondent.

### OPINION OF THE COURT

MAZZARELLI, J.

■ The main issue to be resolved on this appeal is whether an excess insurance carrier must allege and demonstrate prejudice when asserting late notice of claim or occurrence as a defense against a claim by a co-excess insurance carrier suing for contribution. Although the need for carriers seeking to disclaim coverage based on late notice has been addressed in the context of primary insurance and reinsurance coverage, the question, as framed here, has yet to be squarely addressed by an appellate court in this State. Notwithstanding Federal authority to the contrary, we perceive the role of an excess level insurance carrier as being functionally more akin to that of a reinsurer and significantly different from that of a pri-

mary insurance carrier, which typically undertakes the defense and direction of the underlying litigation against the insured. It follows, therefore, that the reasons behind the "no prejudice" exception carved out of the general rules of contract for primary insurers are inapplicable to the claim brought here by an excess insurance carrier against another excess insurance carrier. Accordingly, we reverse the IAS Court's order granting summary judgment in defendant's favor and reinstate the plaintiff's complaint.

## Procedural History

The essential facts are undisputed. On or about December 23, 1985, a family of five died in their Alabama home due to carbon monoxide poisoning caused by a gas furnace that had been improperly serviced by the insured, Mobile Gas. As Mobile Gas's investigation of the furnace installation confirmed its own negligence, it conceded liability in the underlying wrongful death action. Mobile Gas had three different levels of insurance coverage; it had a primary insurance policy, an excess insurance policy, and several excess to excess or "second level excess" insurance policies.

The primary insurance policy was purchased from Liberty Mutual Insurance Company (Liberty) in the amount of $300,000. Acknowledging the lack of any viable defense to liability by its insured, and anticipating that the underlying action would ultimately settle for an amount approximating $10 million, Liberty agreed to contribute the full amount of its coverage toward any final settlement with the decedents' estates. Mobile Gas's policy with American Home Assurance Company (American), plaintiff in the instant action, provided the entire first layer of excess coverage in an amount of $5 million. The second layer of excess coverage for the insured in the amount of $10 million was a "package layer", with seven individual insurance carriers providing specific percentages of coverage. American was responsible for 40% of the second layer of excess coverage and defendant International Insurance Company (International) was responsible for up to 5%.

On August 29, 1986 Mobile Gas's defense counsel wrote to American summarizing the depositions taken in the wrongful death action filed by the estates of the deceased. Defense counsel assessed the probability of an adverse verdict against Mobile Gas as 100%. American then attempted to settle with the estates for the full coverage of the primary and first level excess policies: that is, $5.3 million. When this proved unsuc-

cessful, American notified the second level excess carriers, including defendant International, and informed them of the status of the claim and the estates' offer to settle for $12.2 million. On December 22, 1986, American telephoned a representative of defendant International to advise that he was going to Alabama to negotiate a settlement of up to $12.5 million and that this would require a contribution from defendant and the other second level excess carriers. As it turned out, American was able to settle the underlying wrongful death action for $11.5 million, thus penetrating the second excess level of coverage to the extent of $6,200,000.

When defendant International and three other second level excess insurers, National Casualty Company (National), Republic Insurance Company (Republic), and United National Insurance Company (United), refused to contribute their proportional shares of the second layer of excess coverage, American commenced the instant action against International and one against National in New York State Supreme Court (*see, American Home Assur. Co. v National Cas. Co.*, 209 AD2d 291). American also commenced actions against Republic and United in the Federal District Court, which held, in April 1992, that American had no claim against the two second level excess insurance carriers sued therein because "*direct* insurers need not demonstrate prejudice to assert a defense of untimely notice" (*American Home Assur. Co. v Republic Ins. Co.*, 788 F Supp 214, 216, *affd* 984 F2d 76, *cert denied* 508 US 973 [emphasis added]). The Federal District Court relied, *inter alia*, on the New York Court of Appeals decision in *Security Mut. Ins. Co. v Acker-Fitzsimons Corp.* (31 NY2d 436). Subsequently, in May 1992, the New York Court of Appeals held in *Unigard Sec. Ins. Co. v North Riv. Ins. Co.* (79 NY2d 576) that the no prejudice exception for primary insurers encapsulated in *Security Mut.* should not be extended to reinsurers; however, the Federal District Court declined to grant reargument. In January 1993, the United States Court of Appeals, Second Circuit, affirmed (*see, American Home Assur. Co. v Republic Ins. Co.*, 984 F2d 76, *supra*).

In the instant action, by separate motions returnable April 22, 1994, defendant International moved to amend its answer to assert the defense of collateral estoppel and for summary judgment dismissing the complaint. International argued that American had a full opportunity to litigate the factual issues as they pertain to this action against International in the Federal action in which American sued co-second level excess

insurers Republic and United. The IAS Court agreed, granted both motions, and dismissed the complaint. This appeal ensued.

## Collateral Estoppel

■ Preliminarily, we note that the doctrine of collateral estoppel should not have been applied by the IAS Court. Clearly, the Federal District Court's grant of summary judgment and the affirmance by the Second Circuit in *American Home Assur. Co. v Republic Ins. Co.* (788 F Supp 214, *affd* 984 F2d 76, *supra)* was on a pure question of law, to wit, "does an excess insurance carrier have to allege and prove prejudice when advancing a defense of late notice?" The Federal courts answered the question in the negative.

This Court has interpreted the doctrine of collateral estoppel to mean that when an issue of ultimate *fact* has once been determined by a valid and final judgment, that issue cannot again be litigated by the losing party in any future lawsuit, but that collateral estoppel does *not* apply to an unmixed or pure question of law (*Matter of Department of Personnel v City Civ. Serv. Commn.*, 94 AD2d 5, 7, [Milonas, J.], quoting *Matter of McGrath v Gold*, 36 NY2d 406, 411; *see also, Nationwide Mech. Contrs. Corp. v Hokkaido Takushoku Bank*, 188 AD2d 871, 873, *lv denied* 81 NY2d 711). That this case presents a purely legal issue constituted, in and of itself, a sufficient basis upon which to preclude application of collateral estoppel. Furthermore, it has been observed that collateral estoppel is a flexible doctrine which can never be rigidly or mechanically applied (*Department of Personnel v City Civ. Serv. Commn.*, 94 AD2d, *supra,* at 7) as it is, at its core, an equitable doctrine reflecting general concepts of fairness (*D'Arata v New York Cent. Mut. Fire Ins. Co.*, 76 NY2d 659, 664, 668). In the case at bar rigid application of collateral estoppel leads to a result that would be undeniably inequitable. That this is so is underscored by the Second Circuit's acknowledgement that its reasoning leads to a result that is unfair (*American Home Assur. Co. v Republic Ins. Co.*, 984 F2d, *supra,* at 79). Accordingly, the IAS Court should have declined to consider itself collaterally estopped from reaching the merits of what is distinctly a question of State law.

## Second Level Excess Coverage and the "No Prejudice" Exception

■ Turning then to the merits of the legal issue presented on this appeal, we begin by observing that when the Court of

Appeals decided *Security Mut. (supra)* in 1972, it was "settled New York law that the notice provision *for a primary insurer* operates as a condition precedent and that the insurer need not show prejudice to rely on the defense of late notice" (*Unigard Sec. Ins. Co. v North Riv. Ins. Co.*, 79 NY2d 576, 581, *supra* [emphasis added]). Further, the no prejudice rule for *primary insurers* was a *limited exception* to the established rules of contract law that one seeking to escape the obligation to perform under a contract must demonstrate material breach or prejudice, and that a contractual duty ordinarily will *not* be construed as a condition precedent absent clear language showing the parties intended to make it a condition *(supra,* at 581). The most compelling reason articulated for the New York exception, as applied to primary insurers, is that it promotes prompt notice by the insured. Prompt notice in turn affords the insurer the opportunity to protect itself against fraudulent claims by timely investigation of claims while witnesses and physical evidence are still available, allows the insurer to provide a sufficient reserve fund by making early estimates of potential exposure, and enables an insurer to exercise early control over the claim, thereby enhancing the possibility of settlement *(supra,* at 581-582).

Twenty years after its decision in *Security Mut. (supra)*, the Court of Appeals had occasion to consider extending the limited "no prejudice" exception to reinsurers. A reinsurer is an insurer who insures another insurer, and part of the risk is "ceded" to the reinsurer in return for part of the premium. In *Unigard (supra,* at 582), the question certified to the New York Court of Appeals by the United States Court of Appeals, Second Circuit, was rephrased to ask whether "the same reasons for adopting the 'no prejudice' exception to the general rules of contract for primary insurers apply to reinsurers?" In answering this question in the negative, the New York Court of Appeals articulated two principal rationales. First, the nature of reinsurance is such that the carriers are not obligated to indemnify an insured, but rather indemnify one or more other insurers. Thus, presumably, the insured is not even obligated to give notice to a reinsurer. The second rationale was expounded by the Court as follows:

"A reinsurer is not responsible for providing a defense, for investigating the claim or for attempting to get control of the claim in order to effect an early settlement. *Unlike a primary insurer* it may not be held liable to the insured for a breach of these duties. Settlements, as well as the investigation and

defense of claims are the *sole responsibility of the primary insurer* * * *

"[T]here is no sound reason to depart from the general contract law principle that a breach will excuse performance only if it is material or demonstrably prejudicial. * * *

"This is not to suggest that a reinsurer may never assert late notice as a ground for avoiding its obligations under a reinsurance contract. All we hold here is that the reinsurer must demonstrate how it was prejudicial and may not rely on the presumption of prejudice that applies in the late notice disputes between primary insurers and their insureds." (*Unigard Sec. Ins. Co. v North Riv. Ins. Co.*, 79 NY2d, *supra,* at 583-584 [emphasis added].)

The Second Circuit, however, held that although the word "primary" can be used to distinguish "excess" coverage, in *Unigard* the Court of Appeals used "primary" in the sense of "direct" coverage. Furthermore, because excess insurance directly indemnifies the insured, it is "direct" and therefore "primary", and the *Security Mut.* rule that no prejudice need be alleged before disclaiming coverage applies (*American Home Assur. Co. v Republic Ins. Co.*, 984 F2d 76, 77-78, *supra*). The Second Circuit explained:

"The word 'primary' is used also in the field of excess insurance to distinguish coverage which attaches immediately upon the happening of an occurrence, from excess coverage, which attaches only after a predetermined amount of 'primary' coverage has been exhausted. * * * Seizing upon this usage of the word 'primary', American Home contends that [Republic and United] are 'excess' insurers, not 'primary' ones, and therefore they are required to show prejudice.

"In making this argument, American Home overlooks the well-established rule of construction to the effect that words can take on different meanings in different contexts. * * * Thus, the word 'primary' may be used in one context to distinguish coverage, that attaches immediately upon the happening of an occurrence, from 'excess' coverage, while in another context it may be used to distinguish coverage, written directly for the insured, from coverage that indemnifies the direct or 'primary' insurer. It is in the latter context that the New York Court of Appeals used the word 'primary' in *Unigard.*" (*Supra,* at 77-78.)

Clearly, the analysis of the Second Circuit emphasizes the first principal rationale articulated by the Court of Appeals in *Unigard* to the exclusion of the second.

We find, however, after affording due weight to the interpretation of *Unigard (supra)* adopted by the Second Circuit, that it is the second group of reasons articulated in *Unigard* by the Court of Appeals which is more compelling and instructive in formulating the rule applicable to the circumstances underlying this appeal. In our view, our Federal colleagues misapprehend the use of the word "primary" when they read it as synonymous with "direct" in the context of this litigation. Rather, we agree with American's position that in this context there is a significant distinction between the two words that is consistent with the second rationale put forth by the Court of Appeals for the rule in *Unigard*, that comports with settled rules of contract law, and promotes a far more equitable result. We note, too, that our approach is also consistent with that alluded to by our colleagues in the Appellate Division, Second Department, in dicta in *Matter of Crum & Forster Org. v Morgan* (192 AD2d 652, 654-655) to the effect that when one of two excess insurers sues the other for contribution, that claim should not be precluded by a failure to receive timely notice unless some prejudice is shown.

While the issue of whether defendant International received late notice is concededly a disputed question of fact, in our view, it is one that need not be resolved as, absent any allegation of prejudice to it, International should not be permitted to disclaim coverage on this basis. It is true that in the instant case American was the lead insurer effecting a settlement, but this is only because Liberty, the primary insurer, was persuaded early on by its own and the insured's investigations that its liability was 100% certain and would exceed the $300,000 limit of that policy. There is no basis in the record to find, nor, given the circumstances, would common sense and prudence have counseled, the initiation by defendant International, a second level excess insurer, of yet another investigation of the accident. Such an investigation would have duplicated the investigation of the insured by its outside counsel, the primary insurer Liberty, which donated its entire $300,000 exposure early on, and that of American, which had full exposure on its $5,000,000 first level of excess coverage. Merely on the second level of excess coverage, plaintiff American had an exposure eight times greater than that of defendant International. It is difficult, therefore, to conceive of how defendant International would have had a greater motive to limit their mutually insured's liability than did plaintiff American. Defendant International accepted premiums in exchange

for its agreement to indemnify its insured, but now seeks to avoid its obligations on a basis which contract law has long rejected. As the Court of Appeals has stated, "one seeking to escape the obligation to perform under a contract must demonstrate a material breach or prejudice" (*Unigard Sec. Ins. Co. v North Riv. Ins. Co.*, 79 NY2d, *supra*, at 581, citing numerous precedents). As the foregoing establishes, not only did International not establish prejudice, its allegations do not even amount to a viable claim of prejudice. Thus, International should be required to adhere to its end of this contract for second level insurance coverage.

We emphasize that an excess insurer such as any of the parties to this litigation would not be precluded from asserting late notice to it as a defense, if such were the case; it would only have to plead and show prejudice, surely a fair burden which applies to any party seeking to escape performance under a contract. The approach we adopt is consonant with principles of fundamental fairness. Moreover, it does not tolerate what the Second Circuit itself labelled "the apparent inequity of permitting excess carriers such as appellees to avoid contribution on the ground of late notice of loss without a showing of some prejudice of substance resulting from the delay" simply on the basis that "[v]olunteer settlements do not always produce equitable results" (*American Home Assur. Co. v Republic Ins. Co.*, 984 F2d 76, 79, *supra*).

As the foregoing discussion makes plain, except for the additional circumstance that reinsurers do not contract directly with an insured, the reasons for not extending to reinsurers the limited exception to the long-established contract law principles discussed above apply with equal force to excess insurers. The exception to the general rule, that prejudice to primary insurers will be assumed without their having to plead it, is a recognition that, in those circumstances, the prejudice is self-evident given that "[s]ettlements, as well as the investigation and defense of claims are the sole responsibility of the primary insurer" (*Unigard Sec. Ins. Co. v North Riv. Ins. Co.*, 79 NY2d, *supra*, at 583). The reasons for adopting the exception in that context are, as demonstrated, inapplicable to the facts of this dispute between second level excess carriers.

Accordingly, the order of the Supreme Court, New York County (Beatrice Shainswit, J.), entered on or about April 18, 1995, which granted defendant International's motion for summary judgment dismissing the complaint on collateral estoppel grounds, should be reversed on the law, without costs, the

defendant's motion for summary judgment on grounds of collateral estoppel denied, and plaintiff's complaint reinstated.

ROSENBERGER, J. P., ELLERIN, KUPFERMAN and NARDELLI, JJ., concur.

Order, Supreme Court, New York County, entered on or about April 18, 1995, reversed, on the law, without costs, the defendant's motion for summary judgment on grounds of collateral estoppel denied, and the complaint reinstated.