695 So.2d 1169 (1997)
MIDWEST EMPLOYERS CASUALTY COMPANY
v.
EAST ALABAMA HEALTH CARE; and Coastal Associates, Inc.
1960015-CER.
Supreme Court of Alabama.
May 30, 1997.
Tom Burgess and Murray H. Gibson, Jr., of Burgess & Hale, L.L.C., Birmingham, for plaintiff.
Phillip E. Adams, Jr., and Robbie Alexander Hyde of Walker, Hill, Adams, Umbach, Meadows & Walton, Opelika, for East Alabama Health Care.
James E. Williams and J. Flynn Mozingo of Melton, Espy, Williams & Hayes, P.C., Montgomery, for Coastal Associates, Inc.
BUTTS, Justice.
The United States District Court for the Middle District of Alabama has certified to this Court a question of Alabama law. That court's order certifying its question contains the following relevant background information:
"In this lawsuit, plaintiff Midwest Employers Casualty Company (`Midwest') brings a declaratory action against defendants East Alabama Health Care (`EAMC')[1] and Coastal Associates, Inc. (`Coastal'). The jurisdiction of this Court has been invoked based upon diversity of citizenship of the parties. 28 U.S.C.A. § 1332. The parties agree that one of the legal issues presented by this case is whether the State of Alabama would require an excess insurance carrier to show prejudice as a basis for denial of a claim based upon failure to comply with the notice provisions outlined in the policy. Midwest contends it does not have to show prejudice; defendants contend it does have to show prejudice. Because this issue of state law is important and determinative, it is appropriate for certification to the Alabama Supreme Court....
"....

*1170 "This is an action for declaratory judgment filed by Midwest against EAMC and Coastal Associates, Inc., arising out of a workers' compensation claim made by Peggy Black ... against EAMC. EAMC is a qualified self insurer of workers' compensation claims; Coastal administered EAMC's workers' compensation claims; and Midwest is EAMC's excess insurer. After Black was injured EAMC made a demand on Midwest for coverage pertaining to Black's underlying claim. Midwest declined to provide any benefits to EAMC, claiming that EAMC and/or Coastal had breached the terms of the policy by failing to comply with four different notice provisions.
"....
"Pursuant to Section 6.02(b)(3) [of Amendment 328] of the Constitution of Alabama 1901 and Rule 18 of the Alabama Rules of Appellate Procedure, the following question is certified to the Supreme Court of Alabama:
"IS AN EXCESS INSURANCE CARRIER REQUIRED TO SHOW PREJUDICE AS A BASIS FOR DENIAL OF A CLAIM PRESENTED BY A QUALIFIED SELF INSURED WORKMAN'S COMPENSATION POLICYHOLDER BASED ON AN ALLEGED FAILURE TO COMPLY WITH THE NOTICE PROVISIONS SET FORTH IN THE POLICY?"

I.
On August 22, 1992, while she was leaving work, Peggy Black stepped into a pothole in the parking lot at the facility operated by her employer, East Alabama Health Care, Inc. ("EAHC"). She suffered an injury to her legs and her back. She experienced immediate pain in her right ankle and foot and in her left knee and hip. She was treated by a physician in the emergency room of the employer's hospital; she was diagnosed with a sprained ankle and was released. Black notified EAHC of her injury that same day, and she later filed a workers' compensation claim with EAHC. EAHC is self-insured for workers' compensation coverage, and Coastal Associates, Inc., is its administrator for claims. EAHC also had an insurance policy from Midwest Employers Casualty Company to indemnify it when a workers' compensation claim exceeds $250,000. The Midwest policy contains several provisions requiring EAHC to give it notice of certain workers' compensation claims before the $250,000 level of benefits is reached.
Black's physical condition worsened and she was diagnosed with a herniated disc in her spine. Although the parties to this lawsuit disagree regarding many facts, they seem to agree that because EAHC believed Black's herniated disc to be inconsistent with her initial injury it disputed whether her back injury was actually related to her stepping into a pothole in the parking lot. Black's herniated disc was surgically removed in January 1993, and in July 1993 EAHC filed a declaratory judgment action against Black in a state court, seeking to determine what benefits were due her under the Alabama Workers' Compensation Act. Black later filed a complaint against Coastal, alleging that Coastal had committed the tort of outrage through its handling of her claims for medical treatment.
Black's workers' compensation claim now exceeds $250,000 and EAHC's indemnity policy with Midwest has been implicated. Midwest contends that during the administration, dispute, and litigation of Black's workers' compensation claim several of the notice provisions in its policy were triggered. EAHC did not notify Midwest of Black's August 22, 1992, injury until April 7, 1994.[2] Midwest contends that this notice was untimely under the notice provisions in its policy and that EAHC has violated the terms of that policy. Thus, Midwest contends that because of what it says was late notice of a claim, it is not liable under its insurance policy to indemnify EAHC in relation to Black's workers' compensation claim.

*1171 II.
In its order certifying a question to this Court, the federal district court explained its view of current Alabama law on this topic:
"The Alabama Supreme Court repeatedly held that an insurer need not plead or prove prejudice as a condition for a finding of late notice as a bar to coverage.[*] See, e.g., Correll v. Fireman's Fund Ins. Companies, 529 So.2d 1006, 1008-1009 (Ala. 1988) (holding `the plaintiffs here can take nothing from the absence of the burden upon the insurance company to prove prejudice'); State Farm Mutual Automobile Ins. Co. v. Burgess, 474 So.2d 634, 636 (Ala.1985) (stating that where liability coverage is involved, prejudice to the insurer does not `bear on the reasonableness of delay'); Big Three Motors, Inc. v. Employers Insurance Co. of Alabama, 449 So.2d 1232 (Ala.1984) (indicating that `[t]he adoption of a rule requiring the insurer to show prejudice as a factor in determining reasonableness [has been] rejected'). These cases, however, involved primary insurers rather than excess insurers, and the Alabama Supreme Court has not indicated whether these two entities are to be treated the same for purposes of barring coverage based on untimely notice.
"The rationale for not requiring a showing of prejudice is based on the premises that a primary insurer must have timely notice in order to form an intelligent estimate of its rights and liabilities, to afford it an opportunity for investigation, to allow it to participate in the litigation and to prevent fraud. At least one court, however, has recently recognized that the nonprejudice rule serves no purpose between an insured and its excess insurer because the `re-insurer is not responsible for providing a defense, for investigating the claim or for attempting to get control of the claim in order to effect an early settlement.' American Home Assurance Co. v. International Ins. Co., 219 A.D.2d 143, 641 N.Y.S.2d 241 (1996). Instead, the policy between an insured and an excess insurer should be governed by general contract law which requires demonstrable prejudice before a breach will excuse performance. Id.; contra North American Philips Corp. v. Aetna Cas. & Sur. Co. [Ms. 88C-JA-155, 1995 WL 626047 (Del.Super., April 18, 1995)] (finding that `[d]efendants, as excess insurers, need not, under New York law, show prejudice in order to successfully invoke the late notice defense').
"[*] Thus far, the Alabama Supreme Court has carved out only one exception to the no-prejudice rule: in uninsured motorist insurance cases the factfinder must consider prejudice to the insurer as well as reasons for the delay and the length thereof. State Farm Mutual Automobile Ins. Co. v. Burgess, 474 So.2d 634 (Ala.1985)."
EAHC and Coastal contend that Midwest is an "excess" insurer rather than a primary insurer, and that as an excess insurer Midwest should not be entitled to the protection of what they term the "no prejudice rule." They argue that because, they say, an excess insurance company does not generally investigate claims, provide a defense in litigation for its insureds, or settle claims for its insureds, as does the primary insurer, an excess insurer does not have the same need for prompt notice of a claim against the insured that a primary insurer does. Thus, they ask this Court to hold that an excess insurer such as Midwest cannot deny coverage to its insured unless the notice of the insured's claim was untimely and the excess insurer can prove that its rights have been prejudiced by the lack of notice.
In response, Midwest argues that none of the opinions of this Court relating to notice provisions in insurance policies indicates that there is or should be a distinction between excess and primary insurance carriers. It says that this Court's opinions indicate that the "no prejudice rule" regarding notice of a claim by an insured to its insurer is a blanket rule applying to all liability policies, whether primary or excess.[3] Moreover, Midwest contends that even as an excess insurer it has the same need of timely notice of a claim as does a primary insurer and for all the same reasons a primary insurer requires prompt notice, as well as to determine its needed reserves, to prevent fraud or collusion between *1172 the injured and the insured, to limit exposure by encouraging settlement, to adjust premiums, and to assess policy renewals.

III.
We must determine whether an excess insurer may deny a primary insurer's request for insurance coverage when the primary insurer did not give the excess insurer timely notice of a claim against the primary insurer but the late notice has not prejudiced the rights of the excess insurer. In other words, may an excess insurer deny coverage to a primary insurer based on untimely notice alone, or must it additionally prove prejudice to its rights by the late notice?[4] Although we have held many times that a primary insurer need not prove that it has been prejudiced by untimely notice of a claim by a policyholder in order to deny the claim based on late notice,[5] none of this Court's opinions has specifically addressed the issue of untimely notice to an excess insurer.
A recent national survey of law has found Alabama law regarding a policyholder's notice to a primary insurer to be a minority position among the 50 jurisdictions. Barry R. Ostrager and Thomas R. Newman, Handbook on Insurance Coverage Disputes, § 4.04 (8th ed.1995). In a significant majority of jurisdictions, all insurers, both primary and excess, must prove that their rights have been prejudiced in order to use untimely notice of a claim as a defense to a policyholder's request for coverage. Id.[6] Thus, Alabama law holding that a primary insurer need not demonstrate prejudice in order to use untimely notice as a bar to coveragethe "no prejudice rule"is the minority position. However, at least two of the jurisdictions maintaining the minority position hold that position with regard to primary insurers only and have adopted the majority position with regard to excess insurers, requiring an excess insurer to prove prejudice in order to deny a claim based on late notice. Hartford Acc. & Indem. Co. v. Rush-Presbyterian-St. Luke's Medical Center, 231 Ill.App.3d 143, 172 Ill.Dec. 641, 595 N.E.2d 1311, appeal denied, 146 Ill.2d 627, 602 N.E.2d 452, 176 Ill.Dec. 798 (1992); American Home Assur. Co. v. International Ins. Co., 219 A.D.2d 143, 641 N.Y.S.2d 241, appeal granted, 652 N.Y.S.2d 501 (1996). These courts have recognized that the policy considerations that support a rule that primary insurers need not show prejudice from an untimely notice of a claim do not support the application of that rule to excess insurers. For example, the court in American Home Assur. Co. noted that settlements, as well as investigation and defense of claims, are the sole responsibility of primary insurers and that the purpose of the "no prejudice rule" is to encourage prompt notice, which allows a primary insurer to exercise early control over the claim. 219 A.D.2d at 150, 641 N.Y.S.2d at 246.
Although Midwest provides a list of what it terms "policy reasons" stating why an excess insurer also deserves prompt notice of a claim against one of its primary insurer policyholders, we note that many of these "reasons" may be used by Midwest to argue that it has suffered prejudice from EAHC's failure to comply with the notice provisions of its *1173 policy. For example, it argues that many excess insurers need prompt notice of a claim so that they may investigate and participate in the disposition of the claim. Midwest makes the following argument to this Court:
"In Midwest's case, it was especially critical for Midwest to investigate potential claims which East Alabama would later make under the Midwest policy. Because the Midwest policy had a self-insured retention of $250,000, it was usually implicated only in `big dollar' cases where the financial exposure was vast. In these cases, Midwest had an interest to intervene in order to minimize or prevent that later accumulation of catastrophic medical expenses.

"For example, in Peggy Black's claim and in other claims which involve an injury to the spinal cord or back, preventive treatment is crucial to avoid or minimize lifelong problems. Midwest could have had a direct influence on East Alabama's handling of such a claim by advising or recommending medical treatment, by objecting to East Alabama's potentially contentious or miserly approval of medical requests, by reminding East Alabama that cooperation and good faith in the treatment of Black's injury [were conditions] for indemnity under the Midwest policy, or by suggesting medical treatment denied by East Alabama."
(Emphasis original.)
Although Midwest strenuously argues to this Court that it has an important interest in being involved in the investigation of claims and in settlement discussions, we note that its policy with EAHC disclaims any duty on its part to be responsible for such matters.[7] We find it clear that Midwest and other excess insurers do not have the same duties and responsibilities as primary insurers that form the basis for this Court's adherence to the "no prejudice rule" relating to untimely notice of a claim. Instead, we believe that the arguments made by Midwest in favor of applying the "no prejudice rule" to excess insurers could be better used to support an argument that it has suffered prejudice by a delay in notification of a claim. As the American Home court stated:
"We emphasize that an excess insurer such as any of the parties to this litigation would not be precluded from asserting late notice to it as a defense, if such were the case; it would only have to plead and show prejudice, surely a fair burden which applies to any party seeking to escape performance under a contract."
219 A.D.2d at 151, 641 N.Y.S.2d at 245-46. Accordingly, we conclude that Alabama's "no prejudice rule" in relation to untimely notice of a claim by an insured to its primary insurer does not also apply to excess insurers.

IV.
In conclusion, we hold that an excess insurer is required to show prejudice when it bases its denial of a claim presented by a qualified workers' compensation policyholder on an alleged failure to comply with the notice provisions of the policy.
QUESTION ANSWERED.
SHORES, HOUSTON, KENNEDY, and COOK, JJ., concur.
HOOPER, C.J., and MADDOX and SEE, JJ., dissent.
HOOPER, Chief Justice (dissenting).
The following question has been certified to this Court by the United States District Court for the Middle District of Alabama:
"IS AN EXCESS INSURANCE CARRIER REQUIRED TO SHOW PREJUDICE AS A BASIS FOR DENIAL OF A CLAIM PRESENTED BY A QUALIFIED SELF INSURED WORKMAN'S COMPENSATION POLICYHOLDER BASED UPON AN ALLEGED FAILURE TO COMPLY WITH THE NOTICE PROVISIONS SET FORTH IN THE POLICY?" *1174 The majority answers this question in the affirmative. I cannot agree with this answer; therefore, I must respectfully dissent.
East Alabama Health Care, Inc. (EAHC), for the purpose of workers' compensation claims, is a self-insured entity. It employed Coastal Associates to administer such claims. EAHC did, however, maintain an insurance policy with Midwest to cover claims made against EAHC in excess of $250,000. The Midwest insurance policy explicitly provides that timely notice must be given to Midwest by EAHC in the event certain workers' compensation claims are made against EAHC. Part Seven of the policy states:
"A. Notice of Accident
"1. The Insured shall give prompt written notice to the Insurer if a claim for an injury or disease occurs: which appears to involve indemnity by the Insurer; where it appears reasonably likely that there will be disability of more than one year; or where the total incurred is greater than or equal to 50% of the Self-Insured Retention Per Occurrence specified in Item 6 of the Declarations Page.
"2. The Insured shall also give immediate notice but in no event greater than 60 days written notice to the Insurer if an injury of the following type occurs:
"....
"(d) any injury to the spinal cord;
"....
"3.... If a suit, claim or other proceeding is commenced because of an injury listed in above section 2 or on any injury which appears to involve indemnity by the Insurer, the Insured shall give the Insurer:
"(a) all notices and legal papers related to the claim, proceeding or suit...; and
"(b) copies of reports on investigations made by the Insured on such claims, proceedings or suits.
"4. Failure to render timely notice of any claim in a prompt, established manner to the Insurer by the Insured, or its designated representative may result in a disclaimer of coverage for the particular item."
Midwest claims that several of these notice provisions were violated by EAHC. On August 22, 1992, Peggy Black suffered an alleged workplace injury, but notice of this injury was not given to Midwest until April 7, 1994. Midwest claims that it is not liable under the policy, because of the late notice given by EAHC. EAHC argues that Midwest, as an excess insurer, not a primary insurer, is not entitled to the benefit of the "no-prejudice rule," and, therefore, must prove that its rights have been prejudiced by the untimely notice. However, this contention, which the majority accepts, goes against Alabama precedent and emasculates the insurance contract.
Alabama courts follow the "no-prejudice" rule. That rule means that an insurance company can deny a claim made under a policy, because of untimely notice of a claim by its insured, without having to show that the insurance company has been prejudiced by the untimely notice. Typically, courts will consider other factors, such as the length of delay and the reason for delay but will not require the insurer to show that it has been prejudiced by a delay where the insurance policy explicitly requires the insured to give notice.
"To determine the reasonableness of a delay in giving notice to an insurer, this Court traditionally considers the length of the delay and the reasons for the delay. The question of whether the insurer was prejudiced by the delay is immaterial ... where, as in this case, the giving of reasonably timely notice is expressly made a condition precedent to any action against the insurer."
Correll v. Fireman's Fund Ins. Cos., 529 So.2d 1006, 1008-09 (Ala.1988) (citations omitted) (emphasis in original). The United States District Court for the Northern District of Alabama has also specifically addressed this issue and has applied the no-prejudice rule to an excess insurance carrier. In Pennsylvania National Mutual Casualty Ins. Co. v. Colyer-Lloyd, Inc., CV-93-AR-2627-E (N.D.Ala., Dec. 2, 1994), that court stated that "under Alabama law a showing of *1175 prejudice is not a prerequisite to a finding of late notice as a bar to coverage." It is clear that Alabama precedent applies the no-prejudice rule.
However, Alabama has done away with the no-prejudice rule in one particular area of law, uninsured motorist coverage. State Farm Mutual Automobile Ins. Co. v. Burgess, 474 So.2d 634 (Ala.1985). This Court held in Burgess that in cases involving uninsured motorists, Alabama does require an insurance company to show that it has been prejudiced by the lack of notice in order to deny a claim based on improper notice. However, the Burgess Court strictly limited its holding to uninsured motorist claims. An exception to this general rule should not be made for excess liability insurance carriers, because there is no distinction between an excess insurer and a primary insurer in such a situation. Both types of insurers provide insurance, and both types of insurers need prompt notice of claims made against their insured in order to protect their rights. For instance, an excess insurer needs notice of claims made against its insureds in order to investigate claims, participate in the litigation process, reassess its financial reserves and the amount of premiums, and to decide whether to renew the policy. These are only samples of the reasons why an excess insurer needs timely notice of claims made against its insured.
The majority's opinion allows an insured to simply ignore notice requirements in an insurance policy. The Midwest policy clearly states that notice must be given in order for the insured to be covered under the policy. The language in the policy is not ambiguous, and, thus, it should be given effect as it is written. State Farm Mut. Auto. Ins. Co. v. Lewis, 514 So.2d 863 (Ala.1987). Moreover, to require an insurance company to show prejudice before it can deny a claim because of lack of notice or because of improper notice, where the policy explicitly states that the insured must provide notice to the insurer, essentially disregards the terms of the contract entered into by the parties.
The opinion in this case creates a new rule that allows insureds to escape the plain language of their insurance policies. Such a rule unfairly places the burden on the insurance company to justify clear contract language by showing prejudice; there is no reason to place such a burden on the insurance company. This state's precedent is clear, the contract is clear, and there are numerous reasons for the excess insurer to require notice. It is not difficult for an insured to comply with a notice requirement. Again, words mean what they say. This is simple contract law. Therefore, I respectfully dissent.
MADDOX and SEE, JJ., concur.
NOTES
[1] The federal court referred to East Alabama Health Care, Inc., as "EAMC." We will refer to that party as "EAHC."
[2] As of that date, Black's claim was still within the limits of EAHC's workers' compensation self-insurance fund.
[3] In addition, Midwest notes that although the policy EAHC purchased may be termed an excess policy, it argues that Midwest is actually a primary insurer in relation to EAHC.
[4] We make no finding as to whether EAHC timely complied with the notice provisions in its insurance contract with Midwest. That issue is not before this Court.
[5] Correll v. Fireman's Fund Ins. Companies, 529 So.2d 1006 (Ala.1988) (life underwriter's professional liability policy with primary insurer); Big Three Motors, Inc. v. Employers Ins. Co. of Ala., 449 So.2d 1232 (Ala.1984) (general liability automobile policy with primary insurer); Williams v. Alabama Farm Bureau Mut. Cas. Ins. Co., 416 So.2d 744 (Ala.1982) (automobile liability policy with primary insurer); Southern Guaranty Ins. Co. v. Thomas, 334 So.2d 879 (Ala.1976) (homeowner's liability policy with a primary insurer); Royal Indem. Co. v. Pearson, 287 Ala. 1, 246 So.2d 652 (1971) (automobile liability policy with a primary insurer); American Fire & Cas. Co. v. Tankersley, 270 Ala. 126, 116 So.2d 579 (1959) (service station liability insurance policy with a primary insurer). The only exception to the rule that an insurer need not demonstrate prejudice in order to deny a claim based on untimely notice that this Court has heretofore recognized is in the area of uninsured motorist insurance. State Farm Mut. Auto. Ins. Co. v. Burgess, 474 So.2d 634 (Ala.1985).
[6] The law of at least 36 states requires all types of insurers to demonstrate that an untimely notice by its policyholder has prejudiced its rights in order to use the untimely notice as a basis to deny coverage to the policyholder.
[7] The policy states: "The insurer has no duty to investigate, handle, settle or defend any claims, suits, or proceedings against the insured."