**RED BALL INTERIOR DEMOLITION CORP. and John Palmadessa, Plaintiffs,**

v.

**Daniel PALMADESSA, Donald Palmadessa, William Palmadessa, Supreme Recycling, Inc., and Fortune Interior Dismantling Corp., Defendants.**

No. 94 Civ. 4158 (RWS).

United States District Court,
S.D. New York.

Dec. 4, 1996.

William Dunnegan, New York City, for Plaintiffs.

Gutman & Gutman, Forest Hills, NY (S. Mac Gutman, of counsel), for Defendant Daniel Palmadessa.

Feldman Grodeck, Roseland, NJ Richard A. Feldman, of counsel), for Defendants Donald Palmadessa, William Palmadessa, Supreme Recycling, Inc. and Fortune Interior Dismantling Corp.

## OPINION

SWEET, District Judge.

Defendants Daniel Palmadessa ("Daniel"), Donald Palmadessa ("Donald"), William Palmadessa ("William"), Supreme Recycling, Inc. ("Supreme"), and Fortune Interior Dismantling Corp. ("Fortune") (collectively, the "Defendants") have moved for an order: (1) holding Plaintiffs Red Ball Interior Demolition Corp. ("Red Ball") and John Palmadessa ("John") (collectively, "Plaintiffs") in contempt for failure to comply with this Court's

June 25, 1996 Order; (2) ordering Defendants released pursuant to the terms of a release submitted by Defendants to Plaintiffs; and (3) awarding counsel fees and costs.

Defendant Daniel Palmadessa ("Daniel") has also moved to compel Plaintiffs to indemnify Daniel Palmadessa the amount of $9,956, as well as counsel fees and costs. Plaintiffs have opposed on various grounds and demand a jury trial on the issue of whether the notice of claim was untimely under an indemnity agreement between the parties.

For the reasons set forth below, Defendants' motions for contempt, for an order of release, and for counsel fees and costs will be denied. Daniel's motion for indemnification will be granted, and his motion for counsel fees and costs will be denied. John's request for a jury trial will be denied. In addition, the June 25 Order will be amended to clarify the obligations of the parties thereunder.

### The Parties

Plaintiff John founded the family carting and demolition business which became Red Ball in 1958. He is Red Ball's sole shareholder at present. Defendant Daniel is John's brother and was his partner in several family businesses, including Red Ball. Daniel and John both reside in New Jersey. Daniel's sons, defendants Donald and William, were employed by Red Ball and later incorporated Supreme and Fortune, both of which are New Jersey corporations.

### Facts and Prior Proceedings

The factual and procedural background of this case is fully described in the prior opinions of this Court, familiarity with which is assumed. *See Red Ball Interior Demolition Corp. v. Palmadessa*, 874 F.Supp. 576 (S.D.N.Y.1995); *Red Ball Interior Demolition Corp. v. Palmadessa*, 908 F.Supp. 1226 (S.D.N.Y.1995); *Red Ball Interior Demolition Corp. v. Palmadessa*, No. 94 Civ. 4158, 1996 WL 159066 (S.D.N.Y. April 5, 1996). These parties have also been engaged in litigation before the Honorable Robert J. Ward since 1990. *See Palmadessa v. Palmadessa*, No. 90 Civ. 2429, 1994 WL 191933 (S.D.N.Y. May 13, 1996); 1992 WL 188329

(S.D.N.Y. July 30, 1992). Those facts relevant to the decision of these motions are set forth below.

On May 7, 1996, the parties entered into a settlement agreement (the "Settlement") that was placed on the record before this Court. The Court stated its intention to retain jurisdiction to enforce the Settlement. An order of dismissal (the "Dismissal") "[p]ursuant to the settlement hearing held in Court 5–7–96" was signed by this Court on May 8, 1996 and entered by the Clerk on May 9, 1996.

The Settlement included provisions calling for payment of a sum of money by Daniel Palmadessa, the execution of a release of claims by all parties, and the indemnification of Daniel Palmadessa by John and Red Ball for liabilities arising from the business of Red Ball and several other business ventures in which the parties were involved. The indemnification provision expanded the scope of an existing "Agreement of Indemnification" between John and Daniel Palmadessa, entered into on June 2, 1994 (the "June 1994 Agreement"). The June 1994 Agreement provided that it would be governed by New York law. The Settlement also provided that the sums paid by Daniel under the Settlement would go into trust to be used to satisfy Daniel's claims for indemnification. Upon expiration of the trust term, the trust remainder is payable to John Palmadessa as beneficiary.

Paragraph 2 of the preexisting June 2 Agreement provides:

*Claim Procedure.* If any indemnified claim shall be asserted, notice of such claim shall be given by Daniel to John (and vice versa) as soon as practicable after Daniel (or John) receives knowledge thereof . . .

[I]f Daniel requests, John shall litigate or otherwise contest such claim on behalf of Daniel, in good faith and without unnecessary delay at his own expense and with counsel of his choice . . .

[I]f Daniel fails to litigate or otherwise contest such claim, John shall have the right, acting in good faith and without unnecessary delay, to litigate or otherwise contest such claim . . .

On or about May 24, 1996, Defendants transmitted a certified check in the amount of $492,641.19, payable to "William Dunnegan as attorney for Red Ball Interior Demolition and John Palmadessa." They also transmitted a Release and a Stipulation of Settlement and Discontinuance.

Plaintiffs refused to execute the Release and refused to negotiate the check. On June 7, 1996, Plaintiff John moved: (1) to have the release proposed by Daniel redrawn, on the ground that the proposed Release was overly broad; (2) to have the check redrawn, on the ground that it granted Red Ball a property right in the trust account, when that was not the intent of the Agreement; and (3) to compel Daniel to deliver the original notes to John. On June 19, 1996, Defendants filed a cross motion to compel John Palmadessa, individually and as corporate officer of Red Ball and several other corporate entities named as releasors in Defendants' proposed Release, to accept the tendered check and execute the Release.

By order dated June 25, 1996 (the "June 25 Order"), this Court denied Plaintiffs' motion and granted Defendants' cross-motion. The Order, in its entirety, read:

Plaintiffs having moved and Defendants having cross-moved on June 25, 1996, for enforcement of their settlement agreement of May 7, 1996, Plaintiff's motion is denied. Defendants' motion for counsel fees and costs is denied. Defendants' motion is otherwise granted.

Plaintiffs subsequently failed to comply with the June 25 Order, but placed an executed Release complying with the Order in escrow, pending the outcome of Plaintiffs' anticipated appeal. They also proposed an alternative release.

By letter dated July 10, 1996, Daniel Palmadessa requested indemnification from John for Red Ball tax liabilities deducted from Daniel's personal income tax refund by the State of New York. The State notified Daniel in October 1995 that he would be held liable for the Red Ball taxes, but the amounts were not deducted from his refund until November 3, 1995.

On July 22, 1996, Plaintiffs filed a notice of appeal, seeking review of the June 25 Order. The Court of Appeals has docketed the appeal as number 96–7896. The same day, Defendants filed their instant motion, seeking an order: (1) holding Plaintiffs in contempt; (2) releasing Defendants pursuant to the terms of the Release; and (3) granting attorneys' fees and costs to Defendants. On July 25, 1996, Daniel Palmadessa filed the instant motion seeking an order compelling Plaintiffs to reimburse him for the amount deducted from his state tax refund. On August 1, 1996, Plaintiffs filed a cross motion for a stay of the June 25 Order pending appeal and made a demand for a jury trial on the issue of whether Daniel gave notice of his claim for indemnification within the time required by the indemnity agreement. Oral argument was heard on September 18, 1996. Plaintiffs cross motion for a stay was denied by memorandum endorsement at oral argument. Post-argument submissions were received through October 2, 1996, at which time the matter was deemed fully submitted.

***Discussion***

### I. *The Contempt Motion*

#### A. *Jurisdiction*

The Defendants' contempt motion raises the threshold question of whether the Plaintiffs' notice of appeal of the June 25 Order deprives this Court of jurisdiction to enforce the order through civil contempt.

■ "In general, filing of a notice of appeal confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal." *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 378–79, 105 S.Ct. 1327, 1330–31, 84 L.Ed.2d 274 (1985).

■ However, this Court has jurisdiction to impose contempt sanctions for disobedience of an order currently on appeal. The filing of a notice of appeal "only divest[s] the district court of jurisdiction respecting the questions raised and decided in the order appealed from." *New York State National Org. for Women v. Terry,* 886 F.2d 1339, 1350 (2d Cir.1989), *citing Compania Espano-*

*la de Petroleos, S.A. v. Nereus Shipping, S.A.,* 527 F.2d 966, 972–73 (2d Cir.1975) (*overruled on other grounds by Government of United Kingdom v. Boeing Co.,* 998 F.2d 68, 71 (2d Cir.1993)). In a contempt proceeding, the questions relate solely to the directives in the order and the refusal of the party to comply with them, issues that are entirely distinct from the issues decided in the order itself. In *Bray v. United States,* 423 U.S. 73, 75–76, 96 S.Ct. 307, 309, 46 L.Ed.2d 215 (1975), the Supreme Court held that a contempt charge based on a party's "refusal to obey a lawful order of the District Court initiated 'a separate and independent proceeding at law for criminal contempt, to vindicate the authority of the court' and was 'not a part of the original cause.'" *quoting Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 445, 451, 31 S.Ct. 492, 499, 502, 55 L.Ed. 797 (1911). Although the contempt charge in *Bray* related to an order entered in connection with the primary action, the Court held that the contempt proceeding "was not dependent on the existence of" the violations alleged in the original action. In *United States v. United Mine Workers,* 330 U.S. 258, 294, 67 S.Ct. 677, 696, 91 L.Ed. 884 (1947), the Supreme Court stated: "Violations of an order are punishable as criminal contempt even though the order is set aside on appeal, or though the basic action has become moot." (citations omitted)

■ Thus, a district court remains vested with the ability to enforce an order, even while the order is *sub judice* before the reviewing court. *See Petersen v. Vallenzano,* 1996 WL 252376, *4 (S.D.N.Y. May 13, 1996). Long ago, the Supreme Court ruled that "an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings." *United States v. United Mine Workers of America,* 330 U.S. 258, 293, 67 S.Ct. 677, 696, 91 L.Ed. 884 (1947) (note omitted). Such orders are "to be obeyed until they expir[e] or [a]re set aside by appropriate proceedings, appellate or otherwise. Convictions for criminal contempt intervening before that time may stand." *Id.* Our Court of Appeals has held similarly that "[i]t is for the court of first

instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority, to be punished." *Alemite Mfg. Corp v. Staff,* 42 F.2d 832, 833 (2d Cir.1930).

■ Accordingly, the notice of appeal does not deprive this Court of jurisdiction to entertain the contempt motion.

### B. *Plaintiffs Will Not Be Held in Contempt*

■ The Court may hold a party in civil contempt where there is a "clear and unambiguous order, noncompliance is proved clearly and convincingly, and 'the defendant has not been reasonably diligent and energetic in attempting to accomplish what was ordered.'" *Drywall Tapers, Local 1974 v. Local 530,* 889 F.2d 389, 394 (2d Cir.1989), *quoting Powell v. Ward,* 643 F.2d 924, 931 (2d Cir.1981).

■ For an order to be sufficiently specific to warrant a finding of contempt, the party alleged to have disobeyed the order "must be able to ascertain from the four corners of the order" what acts are required or forbidden. *See Drywall Tapers,* 889 F.2d at 395 (*citing Sanders v. Air Line Pilots Ass'n, Int'l,* 473 F.2d 244, 247 (2d Cir.1972)); *see also* Fed. R.Civ.P. 65(d) ("Every order granting an injunction and every restraining order ... shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained").

■ Although this Court is of the opinion that the actions required by the June 25 Order should have been clear to the parties, the Order operates by reference to the motion papers, and does not expressly set forth its requirements within the four corners of the Order. Therefore, a contempt order is inappropriate at this time.

However, to clarify the obligations of the parties for the future, the June 25 Order will be amended. By granting Defendants' motion on June 25, 1996, this Court ordered Plaintiffs: (1) to execute the general release submitted to them by Defendants and (2) to accept a certified check in the amount of $492,641.19 made payable to "William Dunnegan as attorney for Red Ball Interior Demolition and John Palmadessa," which was tendered on or about May 24, 1996. The June 25 Order is hereby amended accordingly.

### II. *The Motion to Release Defendants*

■ Plaintiffs' notice of appeal deprives this Court of jurisdiction to enter a release on the terms proposed by Defendants and enforced by this Court in the June 25 Order. To resolve the issues raised by Defendants' motion, it would be necessary to address issues of the proper interpretation of the release provisions of the Settlement Agreement. These are the very issues to be resolved in the Plaintiffs' appeal of the June 25 Order, and thus may not be considered during the pendency of that appeal. *See Marrese,* 470 U.S. at 378–79, 105 S.Ct. at 1331 ("filing of a notice of appeal confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal").

### III. *The Motion to Compel Payment to Daniel Palmadessa*

#### A. *Jurisdiction*

Daniel Palmadessa's claim for indemnification raises two threshold jurisdictional questions: (1) whether there is any basis of federal subject-matter jurisdiction to enforce the indemnity agreement; and (2) whether the notice of appeal deprives the district court of this jurisdiction during the pendency of the appeal.

Plaintiffs contend that the Court does not have jurisdiction to enforce the indemnity agreement because the Settlement merely modified an existing private indemnification agreement over which the Court had no prior jurisdiction. They contend that, while the Court retained jurisdiction to enforce the Settlement, it did not thereby assert or acquire jurisdiction over the private indemnity agreement modified by the Settlement. Moreover, they contend that there is no diversity jurisdiction over the indemnity claim,

since John and Daniel are now both residents of New Jersey and the amount in controversy does not satisfy the requirements of 28 U.S.C. § 1332.

In *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994), the Supreme Court held that, in the absence of an independent basis for federal jurisdiction (such as diversity of citizenship), enforcement of settlement agreements is for state courts, unless the federal court embodies the settlement in its order of dismissal or expressly retains jurisdiction to enforce the agreement. 511 U.S. at ——, 114 S.Ct. at 1677; *see also Scelsa v. City University of New York*, 76 F.3d 37, 41 (2d Cir.1996). In passing on the question of whether it has subject matter jurisdiction over a claim raised before it, a federal court begins with the presumption that a cause lies outside its limited jurisdiction, placing the burden of establishing the contrary upon the party seeking to invoke federal jurisdiction. *Kokkonen*, 511 U.S. at ——, 114 S.Ct. at 1675.

The parties do not dispute that this Court retained jurisdiction to enforce the Settlement. The Settlement was put on the record before the Court at a hearing on May 7, 1996; at that hearing, the Court expressed its intention, to which the parties assented, to enforce the Settlement; and the Court's order of dismissal stated that dismissal was "pursuant to the settlement hearing," at which the Court retained jurisdiction. Accordingly, this Court has jurisdiction to enforce the Settlement. *Compare Scelsa*, 76 F.3d at 41–42 & n. 1 (no jurisdiction over settlement where, *inter alia*, settlement was not read into record and district court did not intend to retain jurisdiction).

The remaining question is whether, by properly retaining jurisdiction to enforce the settlement, this Court acquired jurisdiction over the indemnification agreement, the basic terms of which were agreed to on June 2, 1994.

This Court has jurisdiction over John's agreement to indemnify Daniel. The doctrine of ancillary jurisdiction permits a federal court to assert jurisdiction over a claim when it is necessary to "enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen*, 511 U.S. at ——, 114 S.Ct. at 1676 (citations omitted). Here, by retaining jurisdiction over the Settlement, the Court essentially embodied the Settlement in its order of dismissal. *Id.* at ——, 114 S.Ct. at 1677 (retaining jurisdiction has "same effect" as embodying settlement contract in dismissal order). In order to vindicate its authority to enforce the dismissal order and effectuate the terms of the Settlement, it is necessary for this Court to be able to enforce the indemnity provisions of the Settlement. The indemnity provisions appear to have been a significant component of the consideration inducing Daniel to resolve this dispute on the terms set forth in the Settlement. This Court cannot effectively enforce the Settlement if it cannot enforce its indemnity provisions. Of course, a state court could enforce the indemnification provisions, but for this Court to retain jurisdiction over some terms of the Settlement, while disputes over other terms would have to be litigated in state courts, would render enforcement of the Settlement extremely inefficient, if not impossible. Moreover, the Settlement essentially incorporates the terms of the pre-existing indemnity agreement by reference. This incorporation renders the indemnity provisions an essential part of the Settlement this Court supervised and intended to enforce.

Therefore, there is federal subject matter jurisdiction to enforce the indemnity provisions of the Settlement.

The notice of appeal does not deprive this Court of jurisdiction over the issues raised by the indemnification claim. The issues on appeal relate to the interpretation of the Settlement's payment and release provisions. These provisions are unrelated to the indemnification provisions at issue here.

## B. *John Will Be Ordered to Indemnify Daniel*

John argues that Daniel's claim for indemnification should be denied on the merits

because Daniel failed to give John notice of the claim "as soon as practicable" after he became aware of it. In the alternative, John demands a jury trial, pursuant to Fed. R.Civ.P. 38, on the issue of whether Daniel's notice met the requirements of paragraph 2 of the indemnity agreement.

John's arguments assume that prompt notice is a condition precedent to his obligation to indemnify Daniel. However, under New York law, "[a] contractual duty ordinarily will not be construed as a condition precedent absent clear language showing that the parties intended to make it a condition." *Unigard Security Ins. Co. v. North River Ins. Co.,* 79 N.Y.2d 576, 581, 584 N.Y.S.2d 290, 594 N.E.2d 571 (1992) (citing cases under New York law). Moreover, a party seeking to avoid obligations under a contract must ordinarily show prejudice or material breach. *Id.*

The June 1994 Agreement does not expressly condition John's duty upon the promptness of Daniel's notice, nor does John make any claim of prejudice arising from the allegedly delinquent notice of the deduction from Daniel's taxes.

Nonetheless, it might be argued that the prompt notice provision in this case should be construed as a condition precedent to John's obligation to indemnify Daniel for a claim. Certainly, John's duty to indemnify Daniel for a claim is necessarily conditioned upon his receiving notice of the claim, but not necessarily upon his receiving prompt notice. Without notice, John could not be aware of his obligation to pay. However, there is no similarly compelling reason that John cannot indemnify Daniel for a claim merely because notification is delayed.

However, the indemnification agreement permits John to contest or litigate claims against Daniel that are subject to indemnification. It could be argued that the prompt notice provision should be treated as a condition precedent to John's obligation to indemnify Daniel, because prompt notice is necessary to permit John to effectively exercise his right to contest the claim.

New York insurance law provides a possible analogy to support such a reading of the prompt notice provision. Under New York law, a notice provision in an insurance contract operates as a condition precedent; an insurer need not show prejudice to rely on the defense of late notice. *See Security Mut. Ins. Co. v. Acker–Fitzsimons Corp.,* 31 N.Y.2d 436, 440, 340 N.Y.S.2d 902, 293 N.E.2d 76 (1972).

Courts have justified the rule that notice provisions in insurance contracts are to be construed as conditions precedent on several grounds. Prompt notice permits insurers to protect themselves against fraudulent claims by timely investigation while witnesses and evidence are still available, enables insurers to better maintain sufficient reserve funds by making early estimates of potential exposure, and facilitates settlements by giving insurers early control over claims. *See Unigard,* 79 N.Y.2d at 581–82, 584 N.Y.S.2d 290, 594 N.E.2d 571; *see also American Home Assurance Co. v. International Ins. Co.,* 219 A.D.2d 143, 641 N.Y.S.2d 241 (1st Dept.1996).

However, despite some superficial similarities between the indemnification agreement and insurance contracts, this Court declines to create a new exception to the general rule that contractual obligations are to be construed as independent promises, rather than conditions precedent to performance. The New York Court of Appeals has declined to extend the insurance exception to reinsurance contracts. *See Unigard,* 79 N.Y.2d at 583–84, 584 N.Y.S.2d 290, 594 N.E.2d 571. The court reasoned that a reinsurer, unlike a primary insurer, is not obligated to the insured to provide a defense against or to investigate a claim, so that notice is not essential to permit the reinsurer to fulfill its contractual obligations. *Id.* at 583, 584 N.Y.S.2d 290, 594 N.E.2d 571. The fact that a reinsurer has a right, as opposed to an obligation, to consult with and advise the primary insurer on the handling of a claim was held to be insufficient to create a presumption that a notice provision in a reinsurance contract should be read as a condition precedent. *Id.* at 583–84, 584 N.Y.S.2d 290, 594 N.E.2d 571. Failure to provide prompt notice to a reinsurer does not excuse the reinsurer's performance, unless the reinsurer demonstrates actual prejudice. *Id.* at 584,

584 N.Y.S.2d 290, 594 N.E.2d 571. *See also American Home Assurance*, 219 A.D.2d at 149–50, 641 N.Y.S.2d 241 (declining to extend exception to excess insurance contracts).

Here, John has no obligation to litigate on Daniel's behalf (unless Daniel expressly requests that he do so). John's right to contest a claim, like the reinsurer's right to participate in the litigation and investigation of a claim, is insufficient to create a presumption that prompt notice is a condition precedent to John's obligation to pay. Because John has failed to allege any prejudice from the delay, Daniel's allegedly late notice, even if it did not satisfy his obligation to provide notice "as soon as practicable," does not excuse John from paying the claim.

Furthermore, John's request for a jury trial on the issue of whether Daniel satisfied the prompt notice provision will be denied. Since the prompt notice provision is not a condition precedent to John's obligation to pay and John alleges no prejudice from the delay, it is irrelevant whether Daniel satisfied the provision in this case. Thus, there is no material factual issue for a jury to decide. *See American Home Assurance*, 219 A.D.2d at 150, 641 N.Y.S.2d 241 (factual dispute over whether excess insurer received late notice "need not be resolved as, absent any allegation of prejudice ... [the excess insurer] should not be permitted to disclaim coverage on this basis" ).

## IV. *The Motions for Counsel Fees and Costs Will Be Denied*

The parties' applications for counsel fees and costs will be denied. The parties' claims and defenses were not frivolous, and no purpose would be served by awarding fees and costs in this dispute.

### Conclusion

For all of the foregoing reasons, Defendants' motion for contempt is hereby denied; Defendants' motion for an order releasing them in accordance with their proposed Release is hereby denied; and Defendants' motion for attorney's fees and costs is hereby denied. Daniel Palmadessa's motion for indemnification in the amount of $9,956.00 is hereby granted. His motion for attorney'

fees and costs is hereby denied. John Palmadessa's demand for a jury trial is hereby denied. In addition, this Court's June 25 Order is hereby amended in accordance with this Opinion.

Settle order on notice.

It is so ordered.