[970 NYS2d 533]

THE MOUNT SINAI HOSPITAL, Respondent-Appellant, v THE 1998 ALEXANDER KARTEN ANNUITY TRUST, Appellant-Respondent.

First Department, August 20, 2013

APPEARANCES OF COUNSEL

*Cyruli Shanks Hart & Zizmor LLP*, New York City (*James E. Schwartz* of counsel), for appellant-respondent.

*Patterson Belknap Webb & Tyler LLP*, New York City (*David Slarskey*, *Andrew L. Herz* and *Regina Y. Won* of counsel), for respondent-appellant.

## OPINION OF THE COURT

FRIEDMAN, J.P.

We hold that, under the circumstances of this commercial landlord-tenant dispute, it was a constructive condition precedent to the tenant's obligation to pay additional rent for a given year that the landlord submit an additional rent statement for that year within two years after it ended. Accordingly, the landlord, which failed to submit any additional rent statements for more than a decade and then suddenly submitted statements for the previous 12 years on March 1, 2011, is not entitled to collect additional rent for any but the last two of those years (2009 and 2010).

On or about September 15, 1997, the predecessor-in-interest of defendant The 1998 Alexander Karten Annuity Trust (the Karten Trust), as landlord, and plaintiff The Mount Sinai Hospital (Mount Sinai), as tenant, entered into a lease of the second floor of the five-story commercial building located at 309-327 East 94th Street in Manhattan. The lease's initial term was set to expire on April 30, 2013. Pursuant to Mount Sinai's exercise of an option under an extension agreement dated September 1, 2010, the term of the lease has been extended

until April 30, 2014. Mount Sinai operates a dialysis center on the premises demised by this lease.[1]

Article XLIX of the lease (entitled "Operating Costs") provides that the landlord is entitled to collect additional rent for each year of the tenancy after 1998.[2] The additional rent is to be based on the tenant's proportionate share (19.86%) of increases in the landlord's "Operating Costs" (as defined in the lease) for the year in question (the "Comparative Year") in comparison with the Operating Costs incurred in the "Base Operating Year" of 1998. Specifically, section 49.01 of the lease provides:

> "(a) Lessee shall pay to Lessor, as additional rent, without set-off or deduction, Lessee's proportionate share of any increase in 'Operating Costs' (as hereinafter defined [in section 49.02]) over the 'Base Operating Year' (as hereinafter defined).
>
> "(b) The 'Base Operating Year' shall be calendar year 1998.
>
> "(c) The term 'Comparative Year' shall mean each succeeding year following the Base Operating Year."

Section 49.03 of the lease specifies the procedures for billing additional rent. In particular, it requires the landlord to submit to the tenant a statement of "Operating Expenses" (apparently, a misnomer for "Operating Costs") for 1998 (the Base Operating Year) "(*as soon as reasonably practicable*) following the expiration" (emphasis added) of that year. Similarly, the landlord is required to submit to the tenant a statement of "Operating Expenses" (sic) for each post-1998 Comparative Year "*as soon as reasonably practicable*" (emphasis added) following the expiration of that year. The tenant is required to pay the balance of additional rent owed, as shown on the Comparative Year statement, "within ten (10) days after receipt of such statement," subject to the tenant's right to dispute the correctness of the statement as provided elsewhere in the lease.[3] Section 49.05 provides in pertinent part: "If Lessee shall not so

---

1. Mount Sinai also leases part of the ground floor of the same building under a separate lease agreement. Because no issues under the ground-floor lease are raised on this appeal, subsequent references to "the lease" in this opinion mean the second-floor lease only.

2. No issues concerning the base rent under the lease have been raised on this appeal.

3. Section 49.03 of the lease provides in pertinent part:

dispute [in writing] any item or items of any [additional rent] statement . . . within thirty (30) days after such statement . . . has been rendered, Lessee shall be deemed to have approved such statement . . . ." Section 42.04 provides that the tenant's payment of the amount of additional rent billed (without prejudice to its position) is "a condition precedent to its right to contest . . . [the] correctness" of an additional rent statement.[4]

While section 49.03 requires the landlord to submit an additional rent statement "as soon as reasonably practicable" after the expiration of each Comparative Year, the immediately following section of the lease provides the landlord with a two-year safe harbor for late billing. Section 49.04 of the lease provides:

> "The obligation of Lessee with respect to any additional rent pursuant to this Article shall survive the expiration or sooner termination of this lease, for a period of two (2) years. Any delay or failure of Lessor in billing Operating Costs for a period not to exceed two (2) years after the expiration of each Comparative Year, shall not constitute a waiver or in any way impair the continuing obligation of Lessee to make such Expense Payments hereunder."

Notwithstanding the provisions of sections 49.03 and 49.04 of the lease, the landlord failed to submit to Mount Sinai any statement of Operating Costs for 1998 (the Base Operating Year) or for any subsequent Comparative Year until March 1, 2011—a delay of more than 12 years in the case of the statement for the Base Operating Year. The only explanation the Karten Trust of-

---

"Lessor shall submit to Lessee (as soon as reasonably practicable) following the expiration of the Base Operating Year, a statement setting forth the Operating Expenses for the Base Operating Year. Following the expiration of each Comparative Year, Lessor shall submit to Lessee (as soon as reasonably practicable), a statement setting the Operating Expenses for such Comparative Year. If such statement shows that payment is due (hereinafter referred to as the 'Expense Payment') from Lessee to Lessor with respect to such Comparative Year, then . . . Lessee shall make payment thereof (or of the unpaid balance thereof) within ten (10) days after receipt of such statement . . . ."

4. Section 42.04 of the lease provides in pertinent part:
"If Lessee disputes the correctness of any such [additional rent] statement, Lessee shall, as a condition precedent to its right to contest such correctness, make payment of the additional rent billed, without prejudice to its position. If such dispute is finally determined in Lessee's favor, Lessor shall refund to Lessee the amount overpaid."

fers for this lapse is that it was an unintentional "slip up" attributable to the "the quality of the back office" (as counsel characterized it) that suddenly came to light in January 2011, when the organization replaced its controller. After this discovery, on or about March 1, 2011, the Karten Trust submitted to Mount Sinai statements of Operating Costs for the Base Operating Year and for the Comparative Years 1999 through 2010, along with an invoice for total additional rent for the 12 Comparative Years in the amount of $369,793.66.

Although Mount Sinai admittedly did not follow the procedures prescribed by sections 42.04 and 49.05 of the lease for disputing the "correctness" of an additional rent statement (i.e., disputing the statement in writing within 30 days and paying the amount billed without prejudice), it refused to pay the March 2011 invoice for 12 years of previously unbilled additional rent.[5] The Karten Trust responded by serving Mount Sinai with a notice of default and a 30-day notice to cure, dated June 14, 2011. The following month, Mount Sinai commenced this declaratory judgment action, the complaint in which pleads that the Karten Trust "is barred by the terms of the Lease Agreement[ ] . . . and/or the doctrine of laches, estoppel, [or] waiver . . . from now collecting payment of all claimed Additional Rent dating back to 1998." Mount Sinai's complaint prays for "a judicial declaration of the Additional Rent, if any, that is due" under the lease. The Karten Trust answered and asserted a counterclaim to recover possession of the premises in the event Mount Sinai's alleged default remains uncured.

At the time it commenced this action, Mount Sinai also moved for a *Yellowstone* injunction tolling the expiration of the cure period under the notice of default.[6] The Karten Trust crossmoved for summary judgment holding Mount Sinai liable for the billed additional rent. At oral argument on the motion and cross motion, Mount Sinai argued that, on a search of the record, it should be granted summary judgment on the additional rent issue.

In the order appealed from, Supreme Court granted Mount Sinai summary judgment holding that it was not liable for the

---

**5.** In its appellate brief, Mount Sinai states that it "did not formally dispute the correctness of the charges on this untimely and legally ineffective Statement, as it may have been obligated to do in response to a timely statement of Operating Costs under Section 49.05 of the Second-Floor Lease."

**6.** No issues concerning the *Yellowstone* application (which was granted) are raised on this appeal.

first 10 years of additional rent for which it had been billed (1999 through 2008), but granted the Karten Trust summary judgment holding Mount Sinai liable for the last two years of additional rent (2009 and 2010). The court reasoned that "the provision of timely statements detailing annual operating costs is a condition precedent to Mount Sinai's [obligation to make] payment of those costs." In support of this view, the court opined that the two-year safe harbor for late billing provided by section 49.04 of the lease

> "implies that delays in billing of more than two years can be a waiver on the Trust's part. Section 49.04, by providing a two-year outer limit on what may be waived, therefore defines the outer bounds of the phrase [in section 49.03, set forth at footnote 3, *supra*] 'as soon as reasonably practicable.' "

Rejecting the Karten Trust's argument that Mount Sinai was precluded from objecting to the billed additional rent by its failure to follow the dispute procedures provided by the lease, the court held that "providing a statement of operating costs less than two years from the date those costs accrued is a condition precedent to Mount Sinai's obligation to contest the statement within 30 days" as provided by section 49.05. As to the additional rent for 2009 and 2010, for which Mount Sinai was billed less than two years after the expiration of the years in question, the court held that Mount Sinai "waived its right to contest the amount of the operating costs from two years prior to March 1, 2011 by failing to object to the Statement within 30 days as required under § 49.05 of the Lease."

Now before us is the Karten Trust's appeal, and Mount Sinai's cross appeal, from Supreme Court's disposition of the Karten Trust's summary judgment motion. We affirm.

■ At the outset, we must address the Karten Trust's argument that Mount Sinai is barred from raising an objection on any ground to any of the additional rent statements at issue by its admitted failure to promptly pay the additional rent for which it was billed, without prejudice pending resolution of the dispute, pursuant to section 42.04 of the lease (which the parties have dubbed the "pay-now-fight-later" clause).[7] If we were

---

7. In arguing in this Court that Mount Sinai is bound by the additional rent statements, the Karten Trust apparently does not rely (as the motion court did) on Mount Sinai's failure to issue a formal, written dispute of the

to accept this argument, it would be dispositive of both the appeal and the cross appeal. In our view, however, the argument is unavailing.

To be sure, section 42.04 provides that Mount Sinai's up-front payment of the additional rent billed is "a condition precedent to its right to contest . . . [the] correctness" of an additional rent statement. Thus, if Mount Sinai were objecting to the additional rent statements on the ground that they inaccurately stated the building's Operating Costs for the years in question, then the failure to pay the billed additional rent pending resolution of the dispute would bar the objection. While Mount Sinai asserts that the accuracy of statements of Operating Costs issued in 2011 for periods as long ago as 1998 is questionable (and may be impossible to verify), the crux of its present objection is not that those statements are, in fact, inaccurate. Rather, Mount Sinai takes the position that the statements, whether accurate or not, are ineffectual because the underlying statement for the Base Operating Year, and the statements for the first 10 Comparative Years, were served far too late under the terms of the lease. Again, section 49.03 requires that all such statements be issued "as soon as reasonably practicable" after the end of the year in question, and section 49.04 requires that, in any event, a statement for a Comparative Year be issued within two years after the year's end.[8] The pay-now-fight-later clause, on the other hand, applies, by its terms, only to disputes over the "correctness" of additional rent statements. To construe the word "correctness" in section 42.04 to include the concept of timeliness, or the concept of satisfaction of a condition precedent, would stretch the contractual language beyond its natural import (*see Schoonmaker v Hoyt*, 148 NY 425, 431 [1896] ["Contracts or statutes are to be read and understood according to the natural and obvious import of the language, without resorting to subtle and forced construction for the purpose of either limiting or extending their operation"]). Accordingly, to the

statements within 30 days after they were rendered, as required by section 49.05 of the lease.

8. As more fully discussed below, while the statements for 2009 and 2010 were issued within two years after those years ended, Mount Sinai argues that those statements still should be treated as nullities because the statement of Operating Costs for the Base Operating Year (1998) used to derive the additional rent payable for all later years was issued 12 years late. It is Mount Sinai's position that the untimeliness of the statement for the Base Operating Year renders additional rent for any subsequent year uncollectible for the remainder of the term of the lease. We will address this argument at a subsequent point in this opinion.

extent Mount Sinai disputes the timeliness, not the "correctness," of the statements at issue, its objection is not barred by its failure to follow the pay-now-fight-later procedure of section 42.04.

We now turn to the primary issue raised by this appeal, namely, whether it is a condition precedent to Mount Sinai's obligation to pay additional rent for a given Comparative Year under the lease that the Karten Trust *timely* issue a statement of Operating Costs for that Comparative Year. To answer this question, it is helpful to review the Court of Appeals' statement of the principles governing the operation of conditions precedent under New York law:

> "A condition precedent is 'an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises' (Calamari and Perillo, Contracts § 11-2, at 438 [3d ed]; *see,* Restatement [Second] of Contracts § 224; *see also, Merritt Hill Vineyards v Windy Hgts. Vineyard,* 61 NY2d 106, 112-113). Most conditions precedent describe acts or events which must occur before a party is obliged to perform a promise made pursuant to an existing contract, a situation to be distinguished conceptually from a condition precedent to the formation or existence of the contract itself . . . .

> "Conditions can be expressed or implied. Express conditions are those agreed to and imposed by the parties themselves. Implied or constructive conditions are those 'imposed by law to do justice' (Calamari and Perillo, Contracts § 11-8, at 444 [3d ed]). Express conditions must be literally performed, whereas constructive conditions, which ordinarily arise from language of promise, are subject to the precept that substantial compliance is sufficient. The importance of the distinction has been explained by Professor Williston:

> 'Since an express condition . . . depends for its validity on the manifested intention of the parties, it has the same sanctity as the promise itself. Though the court may regret the harshness of such a condition, as it may regret the harshness of a promise, it must, nevertheless, generally enforce the will of the

parties unless to do so will violate public policy. Where, however, the law itself has imposed the condition, in absence of or irrespective of the manifested intention of the parties, it can deal with its creation as it pleases, shaping the boundaries of the constructive condition in such a way as to do justice and avoid hardship'. (5 Williston, Contracts § 669, at 154 [3d ed.].)" *Oppenheimer & Co. v Oppenheim, Appel, Dixon & Co.* (86 NY2d 685, 690-691 [1995]).

The lease in this case does not expressly provide that timely issuance of an Operating Costs statement is a condition precedent to Mount Sinai's obligation to pay additional rent for that year. While section 49.03 of the lease requires that the landlord, "[f]ollowing the expiration of each Comparative Year, . . . submit to Lessee (as soon as reasonably practicable), a statement [of Operating Costs]," there is no language in the lease that explicitly makes Mount Sinai's obligation to pay additional rent conditional on submission of the statement "as soon as reasonably practicable" after the end of the year.[9] This conclusion is not changed by the two-year safe harbor provision of section 49.04, which merely provides that the landlord's failure to bill for additional rent "for a period not to exceed two (2) years after the expiration of each Comparative Year, shall not constitute a waiver or in any way impair" the landlord's entitlement to such additional rent—saying nothing about the effect of a delay in billing of more than two years.[10] In this regard, it is

---

**9.** Certainly, Mount Sinai could not be expected to pay additional rent for a given Comparative Year before it received a statement of the landlord's Operating Costs for that year (or for the Base Operating Year). The question here, however, is whether Mount Sinai's obligation to pay additional rent can arise upon the *untimely* submission of a statement of Operating Costs. There are cases in which timely notice, although required by the contract, has been held not to be a condition precedent to the duty to perform of the recipient of the notice (*see Unigard Sec. Ins. Co. v North Riv. Ins. Co.*, 79 NY2d 576, 582-583 [1992] [the reinsured's compliance with a reinsurance contract's requirement of prompt notice to the reinsurer was not a condition precedent to the reinsurer's obligation]; *see also Red Ball Interior Demolition Corp. v Palmadessa*, 947 F Supp 116, 122-124 [SD NY 1996], *affd* 107 F3d 4 [2d Cir 1997] [the indemnitee's compliance with an indemnification agreement's requirement that the indemnitor be given notice "as soon as practicable" was not a condition precedent to the indemnitor's obligation]).

**10.** Section 49.04 certainly allows the tenant to seek to prove a waiver or estoppel barring the collection of additional rent for a given year based on the landlord's delay in billing of more than two years. The safe harbor provision

noteworthy that section 42.04 (the pay-now-fight-later provision) expressly provides that the tenant's up-front payment of billed additional rent is "a condition precedent to its right to contest [the] correctness" of the landlord's statement of Operating Costs. Hence, it is clear that the parties knew how to create a condition precedent expressly when they consciously intended to do so.

It is not necessarily conclusive, however, that the parties did not make timely submission of a statement of Operating Costs an express condition precedent to Mount Sinai's obligation to pay additional rent. As the Court of Appeals recognized in *Oppenheimer & Co.*, in appropriate circumstances, constructive conditions precedent are "imposed by law to do justice" (86 NY2d at 690 [internal quotation marks omitted]). Indeed, in cases similar to this one, the landlord's timely compliance with the lease's notice requirement has been deemed to constitute a condition precedent to the tenant's obligation to pay additional rent, even though the lease did not contain language expressly conditioning the tenant's obligation to pay on the landlord's giving timely notice (*see Walton v Eastern Analytical Labs.*, 246 AD2d 532 [2d Dept 1998]; *Winfield Capital Corp. v Mahopac Auto Glass*, 208 AD2d 715 [2d Dept 1994]; *but see Goldstein v City of New York*, 159 AD2d 313 [1st Dept 1990]).[11]

█ Of course, under New York law, "all contracts imply a covenant of good faith and fair dealing in the course of performance . . . encompass[ing] any promises which a reasonable person in the position of the promisee would be justified in understanding were included" (*511 W. 232nd Owners Corp. v Jennifer Realty Co.*, 98 NY2d 144, 153 [2002] [internal quotation marks omitted]). Beyond question, a reasonable tenant would have been justified in understanding that the landlord would submit an additional rent statement for a given year within a reasonable time after the expiration of that year. The difficulty of verifying the landlord's claimed operating costs naturally increases with the passage of time, and the tenant, for purposes of managing its own affairs, is entitled to deem ac-

---

cannot be construed, however, to have been intended to extinguish such an entitlement, as a matter of law, based on a delay of that length.

**11.** *Goldstein* was decided in the unique context of leasing to the City of New York; we do not regard that decision as controlling authority for cases arising from ordinary commercial landlord-tenant relationships.

counts for a given year closed at some point.[12] What the parties to this lease would have considered a reasonable time for this purpose can be discerned from section 49.04, the safe harbor clause providing that the landlord's entitlement to additional rent will not be impaired by a delay in billing "not to exceed two (2) years after the expiration of each Comparative Year." Accordingly, under this lease, we find that it is a constructive condition precedent to Mount Sinai's obligation to pay additional rent for a given year that the Karten Trust submit a statement for such additional rent no more than two years after the expiration of that year. Since the Karten Trust served the additional rent statements on March 1, 2011, the constructive condition precedent to Mount Sinai's obligation to pay additional rent was satisfied only with respect to the years that expired within two years before that date (2009 and 2010).[13]

We reject the Karten Trust's argument that the condition should be deemed excused to avoid imposing a "forfeiture" on the landlord. While a court may excuse the nonoccurrence of a condition precedent to avoid causing "disproportionate forfeiture" to the party that would otherwise lose a part of what it expected to receive (Restatement [Second] of Contracts § 229), "forfeiture" in that context means " 'the denial of compensation that results when the obligee loses [its] right to the agreed exchange after [it] has relied substantially, as by preparation or performance on the expectation of that exchange' " (*Oppenheimer & Co.*, 86 NY2d at 692 n 2, quoting Restatement [Second] of Contracts § 229, Comment *b*). The Karten Trust makes no claim that, during the term of the lease, it did anything in actual reliance on the receipt of additional rent. To the contrary, the landlord, by its own admission, seems to have entirely forgotten

---

**12.** The Karten Trust suggests that we should give short shrift to Mount Sinai's objection to the extremely late billing in this case because the total amount of additional rent at issue (approximately $370,000) is a relatively small sum for an institution of Mount Sinai's size. We reject this argument. The principles of the law of commercial contracts and leases are the same for all businesses and institutions, whatever their size.

**13.** [2] Although substantial compliance generally suffices to satisfy a constructive condition precedent (*see Oppenheimer & Co.*, 86 NY2d at 690), we deem the two-year safe harbor to be sufficiently generous to the landlord that the period need not be further extended by application of the doctrine of substantial compliance. In this regard, we note that the two-year safe harbor itself liberally extends the time for submitting an additional rent statement under section 49.03, which requires that the statement for a given year be issued "as soon as reasonably practicable" after the end of that year.

about the additional rent provisions of this lease until 2011.[14] Further, the satisfaction of the condition in question (timely submission of additional rent statements) was a matter entirely within the control of the Karten Trust itself—to avoid the risk of forfeiture, it need only have submitted timely statements, under the liberal standard afforded by the lease's safe harbor provision (*see* Restatement [Second] of Contracts § 227 [1] [in determining whether an event is a condition of an obligor's duty, the preference for "reduc(ing) the obligee's risk of forfeiture" does not apply where "the event is within the obligee's control or the circumstances indicate that he has assumed the risk"]; *National Fuel Gas Distrib. Corp. v Hartford Fire Ins. Co.*, 28 AD3d 1169, 1170 [4th Dept 2006]). We perceive no unfairness in deeming the landlord to have assumed the risk of its own failure to bring about events that were entirely (and easily) under its control.

On its cross appeal, Mount Sinai argues that the 12-year delay (from the end of 1998 to March 1, 2011) in submitting the statement of Operating Costs for the Base Operating Year should bar the Karten Trust from collecting additional rent for the remainder of the term of the lease. It is Mount Sinai's position that the landlord's obligation under section 49.03 of the lease to submit a statement of Operating Costs "as soon as reasonably practicable" after the end of the Base Operating Year should function as a condition precedent to the tenant's obligation to pay additional rent for each subsequent Comparative Year of the lease's term.[15] Thus, according to Mount Sinai, it should not have to pay additional rent for 2009 or 2010, even though the additional rent statements for each of those years was submitted less than two years after the year ended. In this regard, Mount Sinai points out that the same requirement of submission "as soon as reasonably practicable" after the end of the year applies to both the Base Operating Year statement and the statement for each Comparative Year. Accordingly, contends Mount Sinai, if timely issuance of the Comparative Year statement is a condition precedent to the obligation to pay additional

---

**14.** Of course, the Karten Trust and its predecessor-in-interest owned and operated the building regardless of Mount Sinai's lease. Thus, even if the Karten Trust had not lost sight of the lease's additional rent provisions, the costs of operating the building would not have been incurred in reliance on the expectation of receiving additional rent.

**15.** Again, additional rent under this lease is the tenant's pro rata share of the difference between the Operating Costs in the Base Operating Year (1998) and the Operating Costs in each subsequent Comparative Year.

rent for that particular Comparative Year, then timely issuance of the Base Operating Year statement should be a condition precedent to the obligation to pay additional rent for all subsequent years.

 Notwithstanding the epic 12-year delay in submitting the statement of Operating Costs for the Base Operating Year, we decline to foreclose the Karten Trust from collecting additional rent for the remainder of the term of the lease. As previously discussed, the condition precedent that we are applying to Mount Sinai's obligation to pay additional rent for each Comparative Year is a constructive condition precedent—not a requirement that was "agreed to and imposed by the parties themselves" (*Oppenheimer & Co.*, 86 NY2d at 690) but one that has been "imposed by law to do justice" (*id.* [internal quotation marks omitted]). "Where . . . the law itself has imposed the condition, in absence of or irrespective of the manifested intention of the parties, it can deal with its creation as it pleases, shaping the boundaries of the constructive condition in such a way as to do justice and avoid hardship" (*id.* at 691 [internal quotation marks omitted]; *see also* 13 Richard A. Lord, Williston on Contracts § 38:12 at 423 [4th ed 2000]).

Given the flexibility the law affords us in the creation and shaping of a constructive condition, our treatment of the timeliness requirement for a Comparative Year statement as a condition precedent to the tenant's obligation to pay additional rent for that year does not compel us to treat the timeliness requirement for the Base Operating Year statement as a condition precedent to the tenant's obligation to pay additional rent for the remainder of the lease term. In our view, foreclosing the landlord from collecting additional rent for the entire remaining term of the lease would be too harsh a consequence here, even given the default that occurred in this case. Accordingly, the additional rent statements for 2009 and 2010 are not untimely under the lease, and because Mount Sinai has not followed the procedures of sections 42.04 and 49.05 of the lease for disputing the correctness of those statements, it is precluded from contesting them.

In view of the foregoing, we need not reach the remaining issues discussed by the parties.

Accordingly, the order of the Supreme Court, New York County (Eileen Bransten, J.), entered February 2, 2012, which, to the extent appealed from, upon defendant's cross motion for partial summary judgment, declared that plaintiff is not liable

to defendant for additional rent for the years 1999 through 2008, inclusive, and that plaintiff is liable to defendant for additional rent for the years 2009 and 2010, as invoiced by defendant on March 1, 2011, should be affirmed, without costs.

Saxe, Moskowitz and DeGrasse, JJ., concur.

Order, Supreme Court, New York County (Eileen Bransten, J.), entered February 2, 2012, affirmed, without costs.